# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| COALITION FOR INDEPENDENT TECHNOLOGY RESEARCH,<br>*Plaintiff*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, STEVEN C. MCCRAW, in his official capacity as Director and Colonel of the Texas Department of Public Safety, AMANDA CRAWFORD, in her official capacity as Executive Director of the Texas Department of Information Resources and Chief Information Officer of Texas, DALE RICHARDSON, in his official capacity as Chief Operations Officer of the Texas Department of Information Resources, ASHOK MAGO, LAURA WRIGHT, LINDY RYDMAN, CARLOS MUNGUIA, MARY DENNY, MILTON B. LEE, MELISA DENIS, DANIEL FEEHAN, and JOHN SCOTT, JR., in their official capacities as members of the Board of Regents of the University of North Texas System, and MICHAEL WILLIAMS, in his official capacity as Chancellor of the University of North Texas System,<br>*Defendants*. | §§§§§§§§§§§§§§§§§§§§§§§§§§§§§ | No. 1:23-cv-00783 |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas<br><br>BRENT WEBSTER<br>First Assistant Attorney General<br><br>GRANT DORFMAN<br>Deputy First Assistant Attorney General | KIMBERLY GDULA<br>Acting Chief, General Litigation Division<br><br>TODD A. DICKERSON<br>Attorney-in-Charge<br>Assistant Attorney General<br>Texas Bar No. 24118368<br>General Litigation Division |

| | |
|---|---|
| JAMES LLOYD<br>Deputy Attorney General for Civil Litigation | P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>(512) 463-2120 \| FAX: (512) 320-0667<br>Todd.Dickerson@oag.texas.gov<br>**COUNSEL FOR DEFENDANTS** |

## TABLE OF CONTENTS

Table of Contents ......................................................................................................................................iii

Table of Authorities..................................................................................................................................iv

Argument ....................................................................................................................................................1

    I.    Coalition Cannot Parlay its One Impacted Member into a Statewide Injunction, and it Lacks Standing to Pursue such Third-Party Relief. ..........................................1

    II.   Sovereign Immunity Bars Most of Coalition's Claims. .................................................2

    III.  Coalition's Forum Analysis Violates Binding Precedent. ............................................7

    IV.  Coalition's Employment-Based Arguments do Not Change the Analysis Above. ..................9

Certificate of Service................................................................................................................................11

## TABLE OF AUTHORITIES

Cases

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
  851 F.3d 507 (5th Cir. 2017) .................................................................................................. 6

*Animal Legal Def. Fund v. Kelly*,
  434 F. Supp. 3d 974 (D. Kan. 2020) ...................................................................................... 2

*Bond v. Utreras*,
  585 F.3d 1061 (7th Cir. 2009) ............................................................................................... 2

*Buchanan v. Alexander*,
  919 F.3d 847 (5th Cir. 2019) ................................................................................................. 8

*Cantu Services, Inc. v. Roberie*,
  535 F. App'x 342 (5th Cir. 2013) .......................................................................................... 6

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ......................................................................................... 2, 3, 4

*City of San Diego, Cal. v. Roe*,
  543 U.S. 77 (2004) ............................................................................................................... 10

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985) ........................................................................................................... 8, 9

*Faculty Rights Coal. v. Shahrokhi*,
  204 F. App'x 416 (5th Cir. 2006) ........................................................................................ 10

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir. 2023) .................................................................................................. 1

*Fla. Bar v. Went For It, Inc.*,
  515 U.S. 618 (1995) ............................................................................................................... 8

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ............................................................................................................. 10

*Haverkamp v. Linthicum*,
  6 F.4th 662 (5th Cir. 2021) ........................................................................................... 3, 5, 6

*Hazelwood Sch. Dist. v. Kuhlmeier*,
  484 U.S. 260 (1988) ............................................................................................................... 8

*Hope v. Harris*,
  861 F. App'x 571 (5th Cir. 2021) .......................................................................................... 6

*Inturri v. City of Hartford*,
  165 F. App'x 66 (2d Cir. 2006) ........................................................................................... 10

*Jackson v. Wright*,
  82 F.4th 362 (5th Cir. 2023) ......................................................................................... 4, 5, 6

*Jones v. Tex. Juvenile Justice Dep't*,
  646 F. App'x 374 (5th Cir. 2016) ............................................................................................. 6

*Lane v. Franks*,
  573 U.S. 228 (2014) ................................................................................................................ 10

*Lewis v. Scott*,
  28 F.4th 659 (5th Cir. 2022) ..................................................................................................... 4

*Martin v. U.S. E.P.A.*,
  271 F. Supp. 2d 38 (D.D.C. 2002) ........................................................................................... 2

*Meriwether v. Hartop*,
  992 F.3d 492 (6th Cir. 2021) ................................................................................................... 8

*Mi Familia Vota v. Abbott*,
  977 F.3d 461 (5th Cir. 2020) ............................................................................................. 3, 5

*Minnesota Voters All. v. Mansky*,
  138 S. Ct. 1876 (2018) ............................................................................................................ 7

*Missouri v. Biden*,
  83 F.4th 350 (5th Cir. 2023) .................................................................................................... 1

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014) ................................................................................................... 4

*Nelson v. Univ. of Tex. at Dallas*,
  535 F.3d 318 (5th Cir. 2008) ................................................................................................... 6

*Nivelo Cardenas v. Garland*,
  70 F.4th 232 (5th Cir. 2023) .................................................................................................... 7

*Pennsylvania Family Inst., Inc. v. Black*,
  489 F.3d 156 (3d Cir. 2007) .................................................................................................... 2

*Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Illinois*,
  391 U.S. 563 (1968) ........................................................................................................... 8, 10

*Pomicter v. Luzerne Cnty. Convention Ctr. Auth.*,
  939 F.3d 534 (3d Cir. 2019) .................................................................................................... 8

*Rankin v. McPherson*,
  483 U.S. 378 (1987) ................................................................................................................ 10

*Richardson v. Flores*,
  28 F.4th 649 (5th Cir. 2022) .................................................................................................... 3

*Sanjour v. E.P.A.*,
  56 F.3d 85 (D.C. Cir. 1995). ................................................................................................... 1

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................................................................ 1

*Tex. All. for Retired Americans v. Scott*,
 28 F.4th 669 (5th Cir. 2022) ................................................................................................ 6

*Tex. Democratic Party v. Abbott*,
 978 F.3d 168 (5th Cir. 2020) ................................................................................................ 4

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021) .......................................................................................................... 4

*United States v. Kokinda*,
 497 U.S. 720 (1990) .............................................................................................................. 8

*Ward v. Rock Against Racism*,
 491 U.S. 781 (1989) .............................................................................................................. 8

Statutes

Tex. Gov't Code § 418.012 ................................................................................................... 3, 5

Tex. Gov't Code § 620.003(a). ................................................................................................. 3

Other Authorities

*Health Services Division Organizational Chart*, TDCJ ............................................................ 5

*Health Services Division*, TDCJ ............................................................................................. 5

*Health Services Division: Central Administration*, TDCJ ...................................................... 5

*How can I access WiFi in Starbucks Stores*, STARBUCKS (Sept. 27, 2022) ............................ 9

*Starbucks Enters New Era of Growth Driven by an Unparalleled Reinvention Plan*, STARBUCKS
 (Sept. 13, 2022) ..................................................................................................................... 9

## ARGUMENT

**I.     Coalition Cannot Parlay its One Impacted Member into a Statewide Injunction, and it Lacks Standing to Pursue such Third-Party Relief.**

Coalition cannot obtain relief for university professors outside of UNT[1] for four reasons. First, to have standing to sue on behalf of its non-UNT members, Coalition had to allege that they: (1) intended to access TikTok for research or teaching purposes; (2) this conduct was proscribed by a statute or policy; and (3) there exists a credible threat of prosecution thereunder.[2] Coalition alleged no facts on the first prong, so these unidentified other members would not have standing here.

Second, Coalition relies on two recent Fifth Circuit decisions on nationwide injunctions, but they are inapposite. *Missouri v. Biden* found that relief can extend beyond the plaintiffs when "such breadth is *necessary* to give prevailing parties [their entitled] relief."[3] And *Feds for Med. Freedom v. Biden* awarded nationwide relief only after finding the plaintiffs had "over 6,000 members spread across every State in the Nation and nearly every federal agency" who could be impacted by the disputed executive order.[4] Coalition identified only one member it claims to have been injured (UNT Professor Vickery), which is a far cry from the over 6,000 members at issue in *Feds for Med. Freedom*. And Coalition has not shown that a statewide injunction is *necessary* to give Professor Vickery full relief here.

Third, Coalition missed that in *Sanjour v. E.P.A.*, the D.C. Circuit limited its decision to situations "in which plaintiffs seek primarily to vindicate their own first amendment rights," and thus it expressly didn't reach the third-party standing issues implicated here.[5] And again, Coalition's request

---

[1] All terms are as defined in Defendants' motion to dismiss.
[2] *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).
[3] 83 F.4th 350, 398 (5th Cir. 2023) (emphasis added).
[4] 63 F.4th 366, 387–88 (5th Cir. 2023).
[5] *Sanjour v. E.P.A.*, 56 F.3d 85, 92 n.10 (D.C. Cir. 1995).

1

for statewide relief goes well beyond that needed to fully vindicate Professor Vickery's rights.[6]

Finally, *Hoover v. Morales* is no help to Coalition. Had Coalition dug a bit deeper, it would have seen that the district court in *Hoover* found that (1) the organization's members "lack[ed] standing to assert an as-applied challenge to [the] ordinance[,] because the ordinance ha[d] not been applied to a particular plaintiff," and (2) the plaintiffs only had standing to seek third-party relief because they "assert[ed] [a] facial challenge to the ordinance."[7] Thus, *Hoover* supports Defendants' position that Coalition lacks standing to seek third-party relief as it only challenged Texas's ban as-applied.

## II. Sovereign Immunity Bars Most of Coalition's Claims.

*All Non-UNT Defendants:* Binding precedent holds that "[w]here a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, [a] *Young* analysis ends."[8] Coalition's claims against Governor Abbott, Director McCraw, Executive Director Crawford, and Chief Operations Office Richardson fail under this principle as these officials are not statutorily tasked with enforcing the TikTok ban at Texas universities.

Coalition's argument to the contrary ignores the plain text of the policies and laws at issue here. The Directive provides that "every state agency in Texas shall ban *its* officers and employees from downloading or using TikTok" and that this ban "must be strictly enforced by *your* agency's IT department."[9] The Model Plan makes "[e]ach agency" responsible for implementing the plan and for developing "*its own* security policy" to support the plan.[10] And SB 1893 specifies that "a governmental

---

[6] Coalition lacks standing to allege an informational injury that stretches to other Texas universities as it did not identify a "willing speaker" from these other universities who would have standing to sue in his or her own right. *See Bond v. Utreras*, 585 F.3d 1061, 1078 (7th Cir. 2009); *Pennsylvania Family Inst., Inc. v. Black*, 489 F.3d 156, 165–66 (3d Cir. 2007); *Animal Legal Def. Fund v. Kelly*, 434 F. Supp. 3d 974, 995 (D. Kan. 2020); *Martin v. U.S. E.P.A.*, 271 F. Supp. 2d 38, 47 (D.D.C. 2002).
[7] Reply Ex. 1, 5. This document is publicly available on PACER.
[8] *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019).
[9] ECF 1-2, 2–3 (emphasis added).
[10] ECF 1-3, 4, 9 (emphasis added).

2

entity shall adopt a policy prohibiting the installation or use of a covered application on any device owned or leased *by the* governmental entity," not that of *another* governmental entity.[11]

*Governor Abbott:* Coalition argues, without legal support, that Governor Abbott is a proper Defendant because some Texas universities might informally ask his office for "guidance" and "review" before granting an exception to the Directive.[12] But the Fifth Circuit recently held that "[o]ffering advice, guidance, or interpretive assistant" does not make an official suable under *Ex parte Young*.[13] And in *Mi Familia Vota v. Abbott*, Governor Abbott had the ultimate power to grant exceptions—he could "amend or rescind" the challenged executive order at a whim.[14] Yet the Fifth Circuit still found that he was entitled to sovereign immunity.[15]

*DPS and DIR:* Coalition argues that DPS Director McCraw, DIR Executive Director Crawford, and DIR Chief Operations Officer Richardson are proper Defendants as they drafted the Model Plan and approved other state agencies' versions of this plan. But Fifth Circuit precedent holds that merely promulgating a policy doesn't make an official the "enforcer" of that policy.[16] So, the DPS and DIR Defendants cannot be sued here just because they drafted the Model Plan. And Coalition's "approval" point is impermissibly retrospective.[17] Coalition admits that DPS already approved UNT's version of the Model Plan.[18] Is Coalition trying to stop DPS and DIR from approving UNT's plan again? If so, how would that help Professor Vickery? The only ongoing injuries here stem from UNT's enforcement of its implemented policy, not a one-time approval decision that happened months ago.

---

[11] Tex. Gov't Code § 620.003(a).
[12] ECF 1, ¶¶ 9, 37; ECF 29, 11.
[13] *Richardson v. Flores*, 28 F.4th 649, 655 (5th Cir. 2022).
[14] 977 F.3d 461, 467–68 (5th Cir. 2020) (citing Tex. Gov't Code § 418.012).
[15] *Id.*
[16] *Haverkamp v. Linthicum*, 6 F.4th 662, 670 (5th Cir. 2021).
[17] *City of Austin*, 943 F.3d at 998 (explaining that, under *Ex parte Young*, there must be an "ongoing violation of federal law" and the plaintiff must seek "prospective" relief).
[18] ECF 1, ¶ 36; *see also* ECF 1-2, 3.

Also, Coalition lacks standing to challenge the Model Plan. This plan merely recommended extending the TikTok ban to personal devices that connect to state networks. Yet Professor Vickery admitted (1) she doesn't have a personal laptop and (2) it is "difficult and practically infeasible for [her] to pursue her scholarly research using only a personal cellphone."[19] Professor Vickery has no injury that is fairly traceable to the Model Plan, so Coalition cannot challenge the plan on her behalf.[20]

Finally, Coalition argues that the DIR Defendants can be sued because they blocked TikTok on state networks. But again, universities, not DIR, are statutorily tasked with enforcing the TikTok ban at their respective schools. This ends the *Ex parte Young* analysis under binding precedent.[21]

*UNT's Board:* Coalition contends that UNT's Board members are proper Defendants due to the Fifth Circuit's recent *Jackson v. Wright* decision.[22] But *Jackson* is best read narrowly, and it is distinguishable here.

There are four main pillars to *Jackson*, all are seemingly essential to its holding that UNT's Board was a proper defendant. First, the Court found that UNT's Board had "ultimate 'governance' authority at UNT."[23] But this cannot satisfy *Ex parte Young* by itself. A Governor, Attorney General, and Secretary of State can be said to have "ultimate governance authority" over their fields, and this alone isn't enough to make them suable under *Ex parte Young*.[24] Also, a Supreme Court arguably has "ultimate governance authority" over the judicial branch. Are U.S. and Texas Supreme Court justices now subject to the burdens of litigation when a clerk fails to timely docket a pleading—resulting in an

---

[19] ECF 1, ¶ 47.
[20] *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . .").
[21] *See, e.g.*, *City of Austin*, 943 F.3d at 998.
[22] 82 F.4th 362 (5th Cir. 2023).
[23] *Id.* at 367.
[24] *See, e.g.*, *Lewis v. Scott*, 28 F.4th 659, 664 (5th Cir. 2022); *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020); *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014).

unconstitutional First Amendment access violation—or when a judge wrongfully fires a judicial employee? This cannot be the case. And nothing in *Jackson* indicates that the Court intended such a seismic change to the Fifth Circuit's standing and sovereign immunity jurisprudence.

Second, *Jackson* noted that UNT's Board had "direct supervisory authority over the UNT officials who took the actions at issue" and could "countermand" the subordinate officials' decisions.[25] The Court found this fact distinguished its case from prior Fifth Circuit decisions, like *Haverkamp* and *Mi Familia*. But these issues are also not enough to justify an *Ex parte Young* exception.

In *Mi Familia*, Governor Abbott could have "countermanded" the enforcement officers as he had the unfettered right to "amend or rescind" the disputed executive order.[26] As to *Haverkamp*, it appears the relevant defendant—Lannette Linthicum, the TDCJ Director of Health Services—actually had supervisory authority over the employee who denied the plaintiff's surgery, given her job duties and elevated position in TDCJ's organizational chart.[27] It isn't clear why *Jackson* said otherwise. Putting this aside, *Jackson's* analysis can't be reconciled with *Haverkamp's* actual rationale for upholding sovereign immunity: "in a system with approximately 130,000 inmates in custody, and absent any allegations tying Linthicum to the specific decisions at issue, it cannot be plausibly inferred that Linthicum played any role in the decisions Haverkamp challenges as unconstitutional."[28]

Also, the *Jackson* Court cannot have meant that a plaintiff automatically satisfies *Ex parte Young* when he or she sues the relevant agency's apex officials—who will always have at least *some* general "supervisory authority" in this context. This conclusion is fundamentally at odds with the established

---

[25] *Jackson*, 82 F.4th at 368.
[26] *See* 977 F.3d at 467–68; Tex. Gov't Code § 418.012.
[27] *See Health Services Division*, TDCJ, https://tinyurl.com/47x2dcm3; *Health Services Division Organizational Chart*, TDCJ, https://tinyurl.com/yzedhcnp; *Health Services Division: Central Administration*, TDCJ, https://tinyurl.com/3z9tu2ky.
[28] *Haverkamp*, 6 F.4th at 671.

5

principle that *Ex parte Young* cannot be satisfied merely by looking to an official's general duties.[29] Something more is required, which leads to the last two points below.

Third, *Jackson* found it relevant that the plaintiff wrote to UNT's Board about his grievances, and the Board "ignored" this letter.[30] The Fifth Circuit has found that an "*Ex parte Young* analysis can turn on subtle distinctions in the complaint."[31] So, this small fact could help tie the Board to the actual alleged wrongdoers' conduct in a way not present in cases like *Haverkamp*,[32] or here for that matter.

Finally, *Jackson* cannot be divorced from its context[33]—the plaintiff pled that he was removed from his position on a UNT journal, and he sought reinstatement to that position.[34] The Fifth Circuit has historically analyzed *Ex parte Young* more leniently when an employee seeks reinstatement to a prior job or role.[35] A similar principle is found in the context of institutional litigation involving state prisons, where the *Ex parte Young* exception "is so well established" that courts "often do not even mention [it]."[36] Here, Coalition has not pled that Professor Vickery was removed from any position with UNT. This further distinguishes this case from *Jackson*.

To be clear, Defendants believe *Jackson* is irreconcilable with the Fifth Circuit's prior *Ex parte*

---

[29] *See, e.g.*, *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022).
[30] *Jackson*, 82 F.4th at 368.
[31] *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 518 (5th Cir. 2017).
[32] *See Haverkamp*, 6 F.4th at 670–71 (noting the lack of "any allegations tying Linthicum to the specific decisions at issue" and finding it relevant that no one "challenged [TDCJ's] decision and brought it before the Committee").
[33] *See Air Evac EMS, Inc.*, 851 F.3d at 519 ("[T]he *Ex parte Young* analysis turns on the complaint's context . . . .").
[34] *See Jackson*, 82 F.4th at 366, 369. In *Jackson*, which was remanded to the trial court and is still pending, the facts have not been developed establishing that the plaintiff was removed from an editor position).
[35] *See Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) ("[T]his circuit has always treated *Ex parte Young* as an appropriate vehicle for pursuing reinstatement to a previous job position."); *see also Jones v. Tex. Juvenile Justice Dep't*, 646 F. App'x 374, 376 (5th Cir. 2016) ("A request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception . . . .") (quotations and brackets omitted); *Cantu Services, Inc. v. Roberie*, 535 F. App'x 342, 345 (5th Cir. 2013) (noting that there were "special considerations" in the employment/reinstatement context that did not apply to an *Ex parte Young* claim concerning "an award process for a public contract").
[36] *Hope v. Harris*, 861 F. App'x 571, 578 (5th Cir. 2021).

*Young* decisions. And the only facts that could feasibly differentiate *Jackson* from these prior cases—the UNT Board's purported inaction on the *Jackson* plaintiff's specific plea for help, and the plaintiff's request to be reinstated to his alleged former position—are also not present here. Thus, *Jackson* is not binding here due to the rule of orderliness[37] or because it is distinguishable. Either way, this Court should uphold the UNT Board's sovereign immunity for the reasons in Defendants' motion to dismiss.

### III.    Coalition's Forum Analysis Violates Binding Precedent.

Coalition correctly does not dispute that (1) UNT's IT Resources are nonpublic forums and (2) Texas's partial TikTok ban is viewpoint neutral. The rest of Coalition's forum analysis, however, is deeply flawed. First, Coalition focuses on whether the partial TikTok ban "restricts teaching and research."[38] But UNT doesn't provide IT resources *just* to advance teaching and research. In the age of the internet, these resources are necessary components to *all* "University business," and there must be privacy, safety, and security safeguards for these resources to function effectively.[39] Coalition never meaningfully explains why the partial TikTok ban is unreasonable in light of these other purposes.

Rather, Coalition tries to set up an impermissible syllogism: (1) a university's restrictions on professors' research and teaching are unconstitutional; (2) Texas's ban restricts university professors' research and teaching; thus (3) Texas's ban is unconstitutional.[40] But the question here isn't whether the alleged First Amendment restriction *exists*, it is whether the alleged First Amendment restriction is *reasonable*.[41] Coalition cannot prevail simply by claiming that the partial TikTok ban limits a few

---

[37] *See Nivelo Cardenas v. Garland*, 70 F.4th 232, 242 n.7 (5th Cir. 2023) ("To the extent two panel decisions conflict, the earlier decision controls.").
[38] *See* ECF 29, 22–25.
[39] *See* ECF 21, 24–25.
[40] *See* ECF 29, 23–24.
[41] *See Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1886 (2018).

professors' academic pursuits.[42]

Second, Coalition contends that privacy, safety, and security are not valid government interests.[43] This argument is barred by binding precedent holding that these are significant (or compelling) government interests.[44]

Third, Coalition's only issue with the ban is that it doesn't carve out a narrow exception for the few university professors who want to research or teach about TikTok.[45] But the Constitution doesn't require such fine tuning. The burden of showing reasonableness in a nonpublic forum "is a light one."[46] Even "common-sense" is enough "to uphold a regulation under reasonableness review."[47] Further, a First Amendment restriction need not be the "most reasonable or the only reasonable limitation" to be constitutional.[48] Texas's partial ban easily surpasses these lenient requirements for the reasons in Defendants' motion to dismiss. Also notable, Coalition improperly focused on how the ban might impact a few professors, rather than on the "overall problem" Texas sought to correct.[49]

Fourth, the Fifth Circuit's *Gibson v. Collier* (and other precedent) shows that Texas can rely on the "shared experiences and policy determinations" of the other governments that have similarly banned TikTok.[50] Coalition's sole response on this point is to state, in a footnote and without

---

[42] *See, e.g.*, *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (noting that, where "no public forum has been created, . . . school officials may impose reasonable restrictions on the speech of . . . teachers"); *Meriwether v. Hartop*, 992 F.3d 492, 506–08 (6th Cir. 2021) (finding that a university's restriction on a professor's in-class discussion was subject to a *Pickering* balancing test, as opposed to finding that the restriction was per se unconstitutional as it impaired the professor's teaching); *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019) (similar).
[43] ECF 29, 17–18, 24.
[44] *See* ECF 21, 27; *see also* ECF 31, 23–24.
[45] *See* ECF 29, 24.
[46] *Pomicter v. Luzerne Cnty. Convention Ctr. Auth.*, 939 F.3d 534, 541 (3d Cir. 2019).
[47] *United States v. Kokinda*, 497 U.S. 720, 734–35 (1990).
[48] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808–09 (1985).
[49] *See Ward v. Rock Against Racism*, 491 U.S. 781, 801 (1989).
[50] ECF 21, 27; *see also Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995).

8

explanation or support, that these other bans "do not reach public university professors."[51] Even if true, and Coalition gives no reason to believe it is, Coalition is missing the point. The U.S. government and its allies—backed by the best intelligence agencies on the planet—have found TikTok to be a national security threat. It is not *unreasonable* for Texas to rely on this consensus and act to protect itself from this threat. And Coalition alleges no facts suggesting it has the knowledge, capability, or resources needed to second-guess our federal government on this sensitive national security issue.

Finally, Coalition exaggerates the ban's impact and misreads the caselaw on the "alternative channels" issue. Coalition ignores that Professor Vickery can access TikTok simply by not using her cell phone to connect to UNT networks. If this is too hard for some reason, she can always buy a laptop and use TikTok that way—Amazon has many options available for around $50.[52] If internet access is a problem, this too has many convenient solutions. Starbucks alone has over 9,000 stores in the U.S., all have free WiFi.[53] And Professor Vickey can always *talk* to students about TikTok without *visiting* the application directly, just like a military history professor can teach students about the Battle of Cannae without sending them to southeastern Italy. Boiled down, Coalition wants to force Texas universities to give professors the *most efficient* access to TikTok—i.e., one without *any* restrictions. This is not a cognizable claim under Supreme Court precedent: "The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message."[54]

### IV.   Coalition's Employment-Based Arguments do Not Change the Analysis Above.

---

[51] ECF 29, 18 n.9.
[52] *See* Reply Ex. 2. This exhibit was obtained by going to www.amazon.com, searching for "laptop," and filtering for a maximum price of $60.
[53] *Starbucks Enters New Era of Growth Driven by an Unparalleled Reinvention Plan*, STARBUCKS (Sept. 13, 2022), https://tinyurl.com/4jy6883w; *How can I access WiFi in Starbucks Stores*, STARBUCKS (Sept. 27, 2022), https://tinyurl.com/5fnu66pe.
[54] *Cornelius*, 473 U.S. at 809.

Defendants' opposition to the preliminary injunction motion detailed why Coalition's employment-based points are flawed, so we only briefly touch on this issue here.[55] Coalition argues for heightened "*NTEU*" scrutiny, but it missed binding precedent holding that this test doesn't apply to First Amendment restrictions in nonpublic forums. Coalition says the well-recognized interests asserted here—privacy, safety, and security—are not viable in the employment context. Yet it cites no caselaw to meaningfully support this position. And Defendants' interests fit comfortably under the well-recognized employment interest—the "effective functioning of the public employer's enterprise"—for obvious reasons.[56]

Finally, Coalition seemingly believes that university professors have *more* speech rights than the general public. The opposite is true. "[T]he First Amendment rights of public employees are significantly more limited than those of the general public."[57] Thus, "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public."[58] Indeed, a principal aim of Coalition's cited employment-based test is to determine whether the "government entity had an adequate justification for treating the employee *differently* from any other member of the general public."[59]

Texas's TikTok ban survives the generally applicable forum analysis. Thus, it *must* survive a more lenient employment-based test. Any other conclusion would contradict fifty years of Supreme Court precedent on this point.[60]

---

[55] *See* ECF 31, 21–24.
[56] *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987); *see also Faculty Rights Coal. v. Shahrokhi*, 204 F. App'x 416, 419 (5th Cir. 2006) (upholding the constitutionality of a university's spam filter and other restrictions on adjunct professors' email accounts, finding them "reasonable in light of the need to control the quantity of data stored on the system and to filter data coming into the system").
[57] *Inturri v. City of Hartford*, 165 F. App'x 66, 68–69 (2d Cir. 2006).
[58] *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004).
[59] *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (emphasis added).
[60] *See, e.g.*, *Lane v. Franks*, 573 U.S. 228, 235–47 (2014); *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 568–75 (1968).

Date: November 6, 2023	Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLYOD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Acting Chief, General Litigation Division

*/s/ Todd Dickerson*
TODD A. DICKERSON
Attorney-in-Charge
Texas Bar No. 24118368
Todd.Dickerson@oag.texas.gov
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548-Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2120
Fax: (512) 320-0667
**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2023, a true and correct copy of the foregoing instrument has been served electronically through the electronic-filing manager to:

Peter B. Steffensen
SMU Dedman School of Law
First Amendment Clinic
P.O. Box 750116
Dallas, TX 75275
(214) 768-4077
psteffensen@smu.edu

Jameel Jaffer
Ramya Krishnan
Stacy Livingston
Knight First Amendment Institute
at Columbia University

475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
jameel.jaffer@knightcolumbia.org
*Counsel for Plaintiff*

                                                 */s/ Todd Dickerson*