IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| DR. ROBERT HOOVER, et al. | § | |
| | § | |
| VS. | § | CIVIL NO. A-97-CA-563 JN |
| | § | |
| DAN MORALES, Individually and in his | § | |
| Official Capacity as ATTORNEY | § | |
| GENERAL OF THE STATE OF TEXAS, | § | |
| et al. | § | |

**ORDER**

Before the Court is Defendants' Motion, with Supporting Brief, for Partial Dismissal for Lack of Standing (Clerk's Doc. No. 35) filed November 7, 1998 and Plaintiffs' Response to Defendants' Motion for Partial Dismissal for Lack of Standing (Clerk's Doc. No. 46) filed November 20, 1998. Upon review of the motion, response, the applicable law, and entire case file, the Court enters the following Order.

In their Motion to Dismiss, defendants Cunningham, Urbanovsky, Hurley, Surles, Angel, and Douglas argue that this Court lacks personal jurisdiction over them pursuant to Fed. R. Civ. P. 12(b)(2) and that Plaintiffs have failed to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). They argue that the Texas Faculty Association (TFA) and the named Plaintiffs lack standing to pursue their claims against them. Defendant Sharp also seeks dismissal claiming that Plaintiffs lack standing to maintain a claim against him because he does not issue state warrants for university faculty salaries.

Plaintiffs respond that the TFA has standing to pursue the university regulations in issue because its members have suffered and will continue to suffer injuries in fact because of the facially unconstitutional university regulations prohibiting professors at state institutions to testify against the interests of the state. *Broadrick v. Oklahoma*, 413 U.S. 601 (1973).

EXHIBIT 1



**Standing**

Standing is a judicially-developed doctrine designed to ensure an Article III court is presented by parties before it with an actual case or controversy. *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2136 (1992) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III," *citing Allen v. Wright*, 104 S.Ct. 3315, 3324, (1984)).

To establish standing, a party must allege a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 104 S.Ct. 3315, 3324 (1984). That injury must be " 'distinct and palpable' and not 'abstract' or 'conjectural' or 'hypothetical' " *Id*. This injury requirement ensures that courts will decide only actual disputes and not abstract policy questions more properly decided by coordinate branches of government. *See, e.g., Allen v. Wright*, 104 S.Ct. 3315, 3325 (1984) ("[T]he law of Art. III standing is built on a single basic idea--the idea of separation of powers.") *See also id.*, ("[Questions relevant to] the standing inquiry must be answered by reference to the Art. III notion that federal courts may exercise power only 'in the last resort, and as a necessity', ... and only when ... [i]t is 'consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process' "). Additionally, standing requires courts to base decisions on a concrete, actual set of facts, so that a court may appropriately limit the precedential value of its decisions. *See Valley Forge Christian College v. Americans United for the Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 759 (1982).

Defendants assert that none of the named individual plaintiffs, Hoover, Skillern, or Reynolds is employed by the University of Texas System, the Texas State University System, the University of North Texas, Texas Woman's University, Stephen F. Austin State University, or Texas Southern University. Consequently, they argue, none of the plaintiffs has standing to seek relief from the defendant chancellors and presidents of these universities and systems.

2

Defendants further assert that the university defendants are unaware of any members of the TFA at any of the above-named systems or universities who has been or foreseeably will be retained as expert witness or consultant for any party in litigation against the state. Thus, these defendants assert that TFA has no members who have suffered or who are in immediate danger of suffering any injury relevant to this suit at the hands of any of the university defendants, as is necessary to establish standing.

Plaintiffs assert that they can meet the elements of standing and assert the doctrine of associational standing. In *Hunt v. Washington State Apple Advertising Commission*, the Supreme Court stated that an organization can assert "associational standing" to represent the interests of individuals if it can show that (1) one or more of the organization's members would have standing in his or her own right; (2) the interests which the organization seeks to protect in the lawsuit are germane to the purposes of the organization; and (3) the nature of the case does not require the participation of the individual affected members as plaintiffs to resolve the claims or prayers for relief at issue. 97 S.Ct. 2434, 2441 (1977); *Warth v. Seldin*, 95 S.Ct. 2197, 2211-12 (1975); *see also United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 116 S.Ct. 1529, 1534 (1996).

Under the doctrine of associational standing, Plaintiffs contend that Texas A&M Professor Reynolds is a TFA member in immediate danger of suffering an injury. Moreover, Plaintiffs assert that it is indisputable that one of TFA's central missions is to advocate for the protection of its members' academic freedoms. Plaintiffs argue that these universities' "outside employment" policies consist of a system of informal prior restraint. Plaintiffs further argue that regulations regarding "outside employment" of the other universities and university systems at issue are worded identically or very similarly as those of the University of Texas System and the Texas A&M University System. Plaintiffs maintain that an injury in fact exists in the instant case because of the danger that the free expression of the faculty of these institutions might be chilled by the existence of the "outside

3

employment" regulations.

The Court finds that Reynolds, a TFA member, clearly suffered an actual or threatened injury to his First Amendment right to free speech when he was denied permission to testify on behalf of the tobacco industry in *The State of Texas v. American Tobacco Company et al.* The Court further finds that the TFA has standing to represent its members at other schools whose ability to testify against the interests of the state may be infringed upon by the "outside employment" regulations.

In cases seeking pre-enforcement review of a statute on First Amendment grounds, a "party has standing to challenge, pre-enforcement, even the constitutionality of a statute if First Amendment rights are arguably chilled, so long as there is a credible threat of prosecution." *Chamber of Commerce of the United States v. Federal Election Comm'n*, 69 F.3d 600, 603-04 (D.C.Cir.1995) (*citing Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392-93, 108 S.Ct. 636, 642-43 (1988)).

In *Virginia v. American Booksellers*, the Supreme Court concluded that plaintiffs had standing to bring a pre-enforcement challenge to a state statute because they had "alleged an actual and well-founded fear that the law will be enforced against them." 484 U.S. at 393, 108 S.Ct. at 643. The Court explained that "the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution." *Id.* Proof of the danger that a statute will have a "chilling effect" on a plaintiff's free speech is often alone enough to establish standing. As explained by the Supreme Court in *Secretary of State of Md. v. Joseph H. Munson Co.*:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole would then be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.

467 U.S. 947, 956, 104 S.Ct. 2839, 2847 (1984). The Court finds that in this case, the implementation of the "outside employment" regulations by the TAMUS is adequate to allege a credible threat of

4

prosecution of other TFA members at the other state institutions named in the complaint. This threat of prosecution is sufficient proof of a "chilling effect" on free speech.

Thus, as in this case, where an individual TFA member at each of the universities named in Defendants' Motion lacks standing to assert an as-applied challenge to an ordinance--because the ordinance has not been applied to a particular plaintiff--he may nonetheless assert his facial challenge to the ordinance under the relaxed prudential standards for First Amendment challenges involving protected speech. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908 (1973). A plaintiff is "permitted to challenge a statute not because [his] own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.*; *see also Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. at 796-99, 104 S.Ct. at 2124-25 (while a plaintiff who does not have standing to challenge an ordinance as applied to him normally does not have standing to assert a facial challenge to the same ordinance, an exception exists where the plaintiff challenges the ordinance under the First Amendment overbreadth doctrine). Based on the foregoing, the Court finds that Plaintiff TFA has standing in the instant cause of action to bring claims against Cunningham, Urbanovsky, Hurley, Surles, Angel, and Douglas.

Additionally, the Court finds that Plaintiff Reynolds has individual standing to bring this cause of action and that he is a member of the TFA. The Court finds that the TFA has adequately alleged that Plaintiff Reynolds is suffering immediate or threatened injury as a result of the challenged TAMUS policy and Expert Witness Rider. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197 (1975). The Court further finds that the interests at stake, the First Amendment rights of faculty at state universities, is germane to the Texas Faculty Association's purpose. Plaintiffs assert that one of the TFA's central purposes is to advocate for the protection of its members' academic freedoms. The Court finds that enjoinment of TAMUS Policy 31.05, the similar policies of other state universities, and the Expert

5

Witness Rider fall under the mantle of that purpose. The Court also finds that as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause. *Id.* Plaintiffs request permanent enjoinment and a declaration of invalidity of the Expert Witness Rider and the various school policies. The Court finds that since no individual damage claims are involved with regard to the additional parties, that the cause can be resolved without the individual participation of each injured party. The Court finds that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington*, 432 U.S., at 343, 97 S.Ct., at 2441. Thus the Court finds that the Texas Faculty Association has standing under the principle of "associational standing" as enunciated in *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342, 97 S.Ct. 2434, (1977) and *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211-2212 (1975), to bring its claims against Defendants Cunningham, Urbanovsky, Hurley, Surles, Angel, and Douglas.

### Defendant Sharp

Defendants also argue that university faculty are not paid their salaries through checks from the Comptroller and thus no plaintiff is in jeopardy of having his paycheck withheld by defendant Sharp pursuant to the rider in issue in this litigation.

Intervenor Frank Skillern argues that he possesses standing to maintain suit against Comptroller John Sharp. According to Plaintiffs, because of the "Expert Witness" rider, Texas Tech Law School Dean Newton advised Skillern to cease all activity on behalf of a neighborhood group fighting the location of a waste incinerator near their homes. Plaintiffs assert that Dean Newton believed that once proponents of the Rider became aware of such activities, Defendant Sharp would be contacted in order to seek withholding of that professor's salary. Being informed of this, Skillern ceased all activity on behalf of this neighborhood group. Plaintiffs assert that Comptroller Sharp is the chief fiscal and accounting officer of the State of Texas and as such posses the putative power to intervene in matters

6

concerning disbursements of money to all state employees. Tex. Govt. Code Ann. § 403.011 (1990). Plaintiffs assert that this threat of a real and immediate injury from Sharp affords Skillern standing to seek injunctive relief against Sharp. The Court finds that a subjective belief that Sharp would act, without more, is insufficient to constitute the necessary threat of prosecution to establish standing. Moreover, Comptroller Sharp has stipulated that he will not act in any way to enforce the "Expert Witness" Rider unless the preliminary injunction granted by this Court is dissolved. *See* Stipulation Concerning Comptroller John Sharp filed December 11, 1997. Accordingly, the Court finds that no threat of injury exists with regard to Sharp. If Defendant Sharp or his successor acts to withhold a faculty member's salary on the basis of the "Expert Witness" rider, the Court would then entertain a motion to enjoin Defendant Sharp.

IT IS HEREBY ORDERED that Defendants' Motion, with Supporting Brief, for Partial Dismissal for Lack of Standing (Clerk's Doc. No. 35) is hereby DENIED except as to the claims against Defendant Sharp.

IT IS FURTHER ORDERED that all claims Against Defendant Sharp are hereby DISMISSED.

SIGNED AND ENTERED this 22nd day of February, 1999.

JAMES R. NOWLIN
UNITED STATES DISTRICT JUDGE