# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

COALITION FOR INDEPENDENT
TECHNOLOGY RESEARCH,

        Plaintiff,

v.

GREG ABBOTT, in his official capacity as
Governor of the State of Texas, *et al.*,

        Defendants.

Civil Action No. 1:23-cv-783

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

Peter B. Steffensen
Texas Bar No. 24106464
SMU Dedman School of Law
  First Amendment Clinic
P.O. Box 750116
Dallas, TX 75275
(214) 768-4077
psteffensen@smu.edu

Jameel Jaffer (*Pro Hac Vice*)
Ramya Krishnan (*Pro Hac Vice*)
Xiangnong Wang (*Pro Hac Vice*)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
jameel.jaffer@knightcolumbia.org

*Counsel for Plaintiff*

**Table of Contents**

Table of Authorities ................................................................................................................. ii

Introduction ..............................................................................................................................1

Argument ..................................................................................................................................1

    I.      The Coalition's claims are justiciable. ..........................................................................1

    II.    This is a public employee speech case, not a public forum case. ...............................2

         A.      This case is governed by *NTEU*. ..................................................................... 2

         B.      The ban fails *NTEU* scrutiny............................................................................ 3

         C.      The ban fails even under forum analysis. ......................................................... 7

    III.   The other requirements for preliminary relief are satisfied. ........................................9

Conclusion ..............................................................................................................................10

## Table of Authorities

**Cases**

*Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95
(3d Cir. 2022) ..................................................................................................... 5

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................ 2

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ................................................................ 2

*Guffey v. Mauskopf*, 45 F.4th 442 (D.C. Cir. 2022) .................................................. 5

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ......................................... 7

*Hoover v. Morales*, 164 F.3d 221 (5th Cir. 1998) ..................................................... 7

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448
(2018) ................................................................................................................. 3

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) ........................................ 2

*Liverman v. City of Petersburg*, 844 F.3d 400 (4th Cir. 2016) ................................. 5

*Lodge No. 5 of Fraternal Order of Police ex rel. McNesby v. City of Philadelphia*,
763 F.3d 358 (3d Cir. 2014) ............................................................................... 7

*Malin v. Orleans Parish Commc'ns Dist.*, 718 F. App'x 264 (5th Cir. 2018) ............ 2

*Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178 (5th Cir. 2005) ................................. 2

*Sierra Club v. U.S. Army Corps of Eng'rs*, 482 F. Supp. 3d 543 (W.D. Tex. 2020) ... 10

*United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995) ...................... 3, 7

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ............................................. 6, 7

*Wilson v. N.E. Indep. Sch. Dist.*, No. 5:14-CV-140-RP, 2015 WL 13716013
(W.D. Tex. Sept. 30, 2015) ................................................................................. 8

**Statutes**

No TikTok on Government Devices Act, Pub. L. No. 117-328, Div. R § 102, 136
Stat. 5258 (2022) ................................................................................................ 8

S.B. 74, 2023-24 Leg., Reg. Sess. (Cal. 2023) ......................................................... 9

**Other Authorities**

Bill Analysis, S.B. 74, 2023–24 Leg., Assemb. Comm. on Accountability and
    Admin. Rev. at 4 (Cal. Aug. 16, 2023) ................................................................ 9

Cabinet Office and The Rt Hon Oliver Dowden CBE MP, *TikTok Banned on UK
    government devices as part of wider app review*, GOV.UK (Mar. 16, 2023),
    https://perma.cc/U2N4-HTDU ............................................................................. 8

Foo Yun Chee, *European Parliament latest EU body to ban TikTok from staff
    phones*, Reuters (Feb. 28, 2023), perma.cc/8HEX-DYW5 ................................. 8

*Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019) ................................................................ 9

Katherine Jones, *Protective Security Policy Framework Direction 001-2023 on
    the TikTok Application*, Australian Government Attorney-General's
    Department (Apr. 4, 2023), https://perma.cc/Y65R-MQ2T .................................. 9

Latvian Public Broadcasting & Dāvids Freidenfelds, *Latvian Foreign Ministry
    bans TikTok on work phones*, Eng.LSM.lv (Mar. 2,
    2023), https://perma.cc/2J2W-WKET ................................................................. 8

Mike Corder, *Dutch gov't staff discouraged from apps such as TikTok*, AP News
    (Mar. 21, 2023), https://perma.cc/VT8D-SXMH ............................................... 9

Off. of Mgmt. & Budget, Exec. Off. of the President, OMB Memorandum No. M-
    23-13, "No TikTok on Government Devices" Implementation Guidance
    (2023) ................................................................................................................. 8

Parliamentary Service, *Media Statement: TikTok on Parliamentary Service
    Devices*, New Zealand Parliament (Mar. 17, 2023), https://perma.cc/YZ6H-
    B5RF .................................................................................................................. 8

## Introduction

Plaintiff the Coalition for Independent Technology Research ("Coalition") moved for preliminary relief in this case because Texas's TikTok ban is already having far-reaching effects on the ability of its members to engage in constitutionally protected research and teaching. Defendants raise jurisdictional objections, but these are unpersuasive, as the Coalition has already explained.[1] Defendants' argument on the merits fares no better. It comes down to the proposition that Texas is entitled to dramatically curtail the First Amendment rights of public university faculty—and of students, other researchers inside and outside Texas, and the general public—even if the risks it points to are speculative and unsubstantiated by evidence, even if the policy it adopts is ineffective and counterproductive, and even if its legitimate goals could be achieved with narrower means. This proposition can't be reconciled with the First Amendment, whether one employs the public-employee speech framework that the Supreme Court and Fifth Circuit have instructed the courts to apply in cases like this, or the public-forum framework that Defendants mistakenly urge on the Court.

All of the requirements having been met here, the Coalition respectfully asks that the Court enter preliminary relief.

## Argument

### I.   The Coalition's claims are justiciable.

Defendants contend that all of the Defendants except Chancellor Williams are immune from suit. PI Opp. 7–8. Defendants are incorrect. As the Coalition has explained, *see* MTD Opp. 2–5, all of the Defendants are amenable to suit because all of them have "some connection" to the

---

[1] The Coalition respectfully incorporates the arguments made in its Response in Opposition to Defendants' Motion to Dismiss ("MTD Opp."), ECF No. 29.

enforcement of the challenged ban. *Ex parte Young*, 209 U.S. 123, 157 (1908). The Coalition has also fully addressed Defendants' argument that the Coalition lacks standing. MTD Opp. 5–8.

## II.     This is a public employee speech case, not a public forum case.

### A.     This case is governed by *NTEU*.

Defendants continue to ignore the caselaw relating to public employees' First Amendment rights and instead approach this case as if the Coalition were asserting a right of access to a public forum. But as the Coalition has already explained, this is not a public forum case. MTD Opp. 13–16. The courts have held, basically uniformly, that restraints on the speech of public employees must be evaluated under the *Pickering*/*NTEU* line of cases. Of the many cases Defendants cite in purported support of their argument, only two involved restraints on the speech of public employees, and both are distinguishable for reasons the Coalition has already discussed. MTD Opp. 14 & n.12. Indeed, to accept the argument that Defendants make here would make nonsense of many Supreme Court and Fifth Circuit precedents that concerned public employees speaking about matters of public concern on government property. *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (applying employee speech framework to views expressed by employee "within the office"); *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) (same to teacher's prayer on school grounds); *Malin v. Orleans Parish Commc'ns Dist.*, 718 F. App'x 264, 269 (5th Cir. 2018) (same to email sent by employee from work email address); *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 191 (5th Cir. 2005) (same to employee's communications over office phone).

Defendants argue that the public-employee framework is a "bad fit" here because the case does not involve a retaliation claim, PI Opp. 15, because the case is about access rather than speech, *id.* 14, and because faculty are "free to say anything they want on or about TikTok," *id.* 13. None of these arguments is compelling. First, the Supreme Court applied something akin to exacting

scrutiny in *NTEU*, rather than traditional *Pickering* scrutiny, precisely because the case did not involve a challenge to a post hoc disciplinary action but rather a challenge to a broad, ex ante restraint on speech. *United States v. Nat'l Treasury Emps. Union* (*NTEU*), 513 U.S. 454, 467–68 (1995). Second, the Coalition's members are not seeking access to government property. They already have access to the university network and to university-issued devices, and obviously they already have access to their personal devices. What they are challenging is not a denial of access, but a restraint on their right to speak—that is, to engage in research and teaching. And third, the Supreme Court has made clear that, in this context, indirect burdens on speech are subject to the same scrutiny as direct ones. The plaintiffs in *NTEU* were also free to say anything they wanted— and yet the Court held that the regulation challenged in that case—a ban on the acceptance of honoraria—should be subject to exacting scrutiny as a restriction on the speech rights of public employees. *Id.* at 468.[2]

**B.     The ban fails *NTEU* scrutiny.**

Texas's ban fails *NTEU* scrutiny because the ban imposes a heavy burden on the free speech interests of faculty, students, other researchers inside and outside Texas, and the general public; because Texas has not demonstrated that the harms it seeks to prevent are "real, not merely conjectural," *NTEU*, 513 U.S. at 475; because the ban is ineffective and even counterproductive;

---

[2] Texas's contention that the ban "*must* be constitutional under an employment-based test" if it survives forum analysis, PI Opp. 15, is also misguided. The "employment-based test" that applies in this context is "exacting," *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2472 (2018), because the speech at issue—research and teaching by public university faculty—relates to matters of public concern and is not subject to the *Garcetti* rule, PI Mot. 5–7, and because the ban operates as a broad, ex ante restraint on speech, *id.* 12; *NTEU*, 513 U.S. at 467–68. In any event, the ban fails scrutiny even under Defendants' proposed test, as discussed below.

and because Texas's legitimate interests could be achieved with far narrower means, PI Mot. 8–18.

Defendants argue that the burden the ban imposes on speech is insignificant (or at least overstated) because "[s]tate employees . . . can still use TikTok on personal devices that do not connect to state networks" and "can use practically any other social media application other than TikTok." PI Opp. 11. This understates the scope of the ban, which applies to personal devices used to conduct state business, not only to those used to connect to state networks. *See* Model Plan at 5; PI Opp. 8 (conceding that the ban applies to any personal device used to access a university service such as university email or a university Zoom account). In addition, Professor Vickery has made clear that at least some faculty do not have personal devices that are not also used to conduct university business, Vickery Decl. ¶¶ 49–51, 67, and that in any event it may be infeasible for faculty to use personal devices for research and teaching, *id.* ¶¶ 52–56, 60–66. The Coalition's declarations also establish that, for faculty whose research or teaching involve TikTok, access to other social media platforms is not a substitute. *Id.* ¶¶ 39–43; Literat Decl. ¶¶ 24–25. Defendants have not submitted any evidence at all on these points.

Second, Defendants have not demonstrated that the harms they seek to prevent are "real, not merely conjectural." PI Mot. 12–13. For good reason, Defendants have abandoned the argument that the ban is necessary to address the threat of disinformation. But they have offered essentially no evidence in support of one of the other interests they have invoked in defense of the ban—the interest in protecting Texans from Chinese surveillance. The Declaration of Meghan Frkuska includes just three sentences on this topic, and two of those sentences are observations about Professor Schneier's declaration, rather than actual assertions of fact. Frkuska Decl. ¶¶ 7–8. The Declaration of Richard Anderson says nothing at all about TikTok's data-collection practices.

Nor does either declaration say anything about the likelihood of TikTok's data being transferred to Bytedance, or Bytedance's data being accessed by the Chinese government. Defendants' citation to an assortment of cherry-picked news articles—which, even taken as true, do not establish that the Chinese government has unfettered access to TikTok's data—is not sufficient to justify the restriction on First Amendment rights. *See Liverman v. City of Petersburg*, 844 F.3d 400, 408 (4th Cir. 2016) ("mere speculation is not enough"); *Guffey v. Mauskopf*, 45 F.4th 442, 448 (D.C. Cir. 2022) (similar); *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 105 (3d Cir. 2022) (similar).[3]

Third, the record establishes that the ban is not an effective means of limiting the Chinese government's surveillance of Texans. As Plaintiffs have explained, the ban is vastly underinclusive in relation to this interest because, to the extent it protects anyone, it protects only state employees. PI Mot. 15–16. This would not be an issue if Texas's rationale for focusing on state employees had something to do with the efficient delivery of government services, but neither of the declarations that Texas has submitted suggests that this is the case. *See id.* 12–13. A further and more fundamental problem with Defendants' argument is that the ban does not actually limit the surveillance of Texans because the Chinese government can obtain essentially the same data from data brokers. As Professor Schneier explains, whatever insights the Chinese government could draw from TikTok's data it can equally draw from data collected from other sources. Schneier Supp. Decl. ¶ 2; *see also* Schneier Decl. ¶¶ 24–30. For this reason, the ban is not just an inefficient

---

[3] Defendants spend more energy defending their assertion that TikTok poses a unique threat to network security, but, as Professor Schneier explains, Schneier Supp. Decl. ¶¶ 6–7, the evidence Defendants offer does not actually establish that TikTok poses a threat that is different in kind or even degree from the threat posed by countless other apps. *See also* Schneier Decl. ¶¶ 36–37; Schneier Supp. Decl. ¶ 7 (noting absence of evidence that the TikTok ban "would in any way reduce" the security risks identified by Richard Anderson, one of Defendants' declarants).

means of achieving Defendants' goal; it does not further the goal *at all*. Indeed, for reasons the Coalition has already explained, the ban is not merely useless but counterproductive. PI Mot. 17; *see also* Schneier Supp. Decl. ¶ 5; Schneier Decl. ¶¶ 39–40.

Finally, the record establishes that the ban is unnecessary. Even if one assumes—disregarding the record evidence—that the ban incrementally restricts the Chinese government's surveillance of Texans, Defendants could achieve their aims through privacy legislation that would not impose any material burden on First Amendment rights. Schneier Decl. ¶¶ 21, 44–45. Indeed, that legislation would be orders of magnitude *more* effective than the ban challenged here because it would presumably restrict data-collection not just by TikTok, but by other platforms as well. Schneier Decl. ¶¶ 21, 44–45. Defendants' security concerns, too, could be addressed without restricting faculty from studying or teaching with TikTok—for example, by establishing a dedicated network for faculty's use of TikTok, which would be "trivial," and by issuing laptops to faculty who want to use TikTok for research and teaching, which would involve only a modest expense. Schneier Suppl. Decl. ¶¶ 8–9. Defendants' only objection to this proposal is that it would not preclude TikTok from collecting data from and about the faculty who use the dedicated network and devices. PI Opp. 19. But if faculty use personal devices for research and teaching, as Texas proposes they should, PI Opp. 11, TikTok will be collecting *exactly the same information*. Schneier Suppl. Decl. ¶ 10.

Relying on *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), Defendants argue that the relevant question here is not whether Defendants can justify the ban's application to public university faculty who want to engage in teaching or research relating to TikTok, but whether they can justify a ban on state employees more generally. PI Opp. 12–13. This is not correct. The Court asked the broader question in *Ward* because the plaintiffs in that case were challenging a regulation

on its face, not as-applied. *Ward*, 491 U.S. at 794. Where, as here, a plaintiff challenges a regulation as-applied under *NTEU*, the relevant question is not whether the regulation is justified in some general sense but whether the government can defend the application of the regulation to the category of employees to which the plaintiff belongs. *See Lodge No. 5 of Fraternal Order of Police ex rel. McNesby v. City of Philadelphia* (*Lodge*), 763 F.3d 358 (3d Cir. 2014); *Hoover v. Morales*, 164 F.3d 221, 226 (5th Cir. 1998) (invalidating regulation where regulation's application to plaintiff faculty members would not adversely affect the government's efficiency interest); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010). In answering that question, a court must ask whether the government can achieve its ends with means that would impose less of a burden on the plaintiff's First Amendment rights. *Lodge,* 763 F.3d at 383–84 (invalidating speech restriction under *NTEU* where restriction was "illogically under-inclusive, permitting many of the harms that the City purportedly s[ought] to address," and "more targeted alternatives" would address those harms); *see also NTEU,* 513 U.S. at 474 (invalidating a ban that was not "reasonably necessary" to address the State's asserted interests).

## C.  The ban fails even under forum analysis.

This is not a forum case, but the ban would fail even if it were. As the Coalition has explained, MTD Opp. 16–17 & n.14, restrictions on speech in a nonpublic or limited public forum can be justified only if they are reasonable in light of the purpose of the forum. Given that the purpose of university networks and devices is to advance universities' educational mission, MTD 15–16, a restriction that altogether precludes faculty from accessing TikTok for research and teaching is unreasonable, particularly because less-restrictive alternatives are available. *See Wilson*

7

*v. N.E. Indep. Sch. Dist.*, No. 5:14-CV-140-RP, 2015 WL 13716013, at *5–6 (W.D. Tex. Sept. 30, 2015).[4]

Defendants argue that the ban is reasonable because it plugs a vulnerability in state agencies' systems and networks, focuses on a company with ties to China, leaves open ample alternative channels for expression, and tracks the restrictions imposed by other states and countries. PI Opp. 1. The Coalition has addressed the first three of these arguments above, and the fourth is no more persuasive than those three. The federal government's ban applies only to executive agencies, as Texas itself notes, PI Opp. 17–18; the only faculty members who could conceivably be impacted by it are those who use TikTok on devices that are also used to carry out research contracts with the government.[5] The federal ban also includes an exception for "security" research.[6] As with the federal ban, most of the foreign-country bans cited by Defendants appear to be aimed at employees of executive government departments, or other central government officials.[7] Some of them include express exemptions for research-related activities,[8] and others are

---

[4] As the Coalition explained in its Response in Opposition to Defendants' Motion to Dismiss, faculty members' personal devices are simply not susceptible to forum analysis because they are neither owned nor controlled by the government. MTD Opp. 16 n.13.

[5] *See* No TikTok on Government Devices Act, Pub. L. No. 117-328, Div. R § 102, 136 Stat. 5258, 5258 (2022).

[6] PI Opp. 18; *see also* Off. of Mgmt. & Budget, Exec. Off. of the President, OMB Memorandum No. M-23-13, "No TikTok on Government Devices" Implementation Guidance (2023).

[7] *See, e.g.*, Parliamentary Service, *Media Statement: TikTok on Parliamentary Service Devices*, New Zealand Parliament (Mar. 17, 2023), https://perma.cc/YZ6H-B5RF (applying restrictions to parliamentary devices and networks); Foo Yun Chee, *European Parliament latest EU body to ban TikTok from staff phones*, Reuters (Feb. 28, 2023), perma.cc/8HEX-DYW5 (explaining that the restrictions apply to devices of European Parliament staff); Latvian Public Broadcasting & Dāvids Freidenfelds, *Latvian Foreign Ministry bans TikTok on work phones*, Eng.LSM.lv (Mar. 2, 2023), https://perma.cc/2J2W-WKET (noting that restrictions apply to the Foreign Ministry).

[8] *See, e.g.*, Cabinet Office and The Rt Hon Oliver Dowden CBE MP, *TikTok Banned on UK government devices as part of wider app review*, GOV.UK (Mar. 16, 2023), https://perma.cc/U2N4-HTDU (excluding from the UK's ban any "work on online harms"); Katherine Jones, *Protective Security Policy Framework Direction 001-2023 on the TikTok*

not bans at all.[9] Among U.S. states, a large number have taken no steps to ban TikTok use by government employees, and some states considering TikTok bans have indicated that public universities would be exempted.[10] Perhaps most important, none of the bans Texas cites has been upheld against a First Amendment challenge, and foreign governments are of course not subject to the First Amendment in the first place.[11]

## III.    The other requirements for preliminary relief are satisfied.

As the Coalition has explained, the ban is imposing a heavy burden on the First Amendment rights of public university faculty in Texas, including on the Coalition's members. In arguing that the burden here is "minor," PI Opp. 20, Defendants ignore the record before the Court, and in particular the declarations of Professors Vickery, Literat, and Zuckerman, which collectively establish that the ban is requiring faculty to suspend research projects, alter their research agendas, change their teaching methodologies, eliminate course materials, and limit their engagement with research produced by other scholars. Defendants' suggestion that only one faculty member has been burdened by the ban is also flatly wrong. *See, e.g.,* Zuckerman Decl. ¶ 28

---

*Application*, Australian Government Attorney-General's Department (Apr. 4, 2023), https://perma.cc/Y65R-MQ2T (excluding from Australia's ban any "research to be conducted or communications to be sent to assist with a work objective (for example, countering mis- or dis-information)").

[9] *See, e.g.*, Mike Corder, *Dutch gov't staff discouraged from apps such as TikTok*, AP News (Mar. 21, 2023), https://perma.cc/VT8D-SXMH (noting that the Dutch government discouraging central office staff from installing TikTok on their work devices).

[10] *See, e.g.*, S.B. 74, 2023-24 Leg., Reg. Sess. (Cal. 2023); *see also* Bill Analysis, S.B. 74, 2023–24 Leg., Assemb. Comm. on Accountability and Admin. Rev. at 4 (Cal. Aug. 16, 2023) (noting that the bill does "*not* apply to . . . [t]he University of California and California State University systems").

[11] Defendants cite *Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019), for the proposition that Texas is entitled to rely on the "universally shared experiences and policy determinations of other states." PI Opp. 11. The case is beside the point because, as discussed above, Texas has not established that other states (or other countries) have uniformly adopted the policy that Texas has adopted here.

("[T]here are Coalition members at multiple public universities in Texas whose research and teaching are directly burdened by the ban."); *id*. ¶ 29 ("Texas's TikTok ban burdens Coalition members outside of public universities in Texas who would otherwise benefit from the research of public university researchers subject to the ban."). The First Amendment injuries at issue here are serious and irreparable.

The balance of the equities and public interest also favor the Coalition. Defendants argue that preliminary relief is unwarranted because the Coalition was slow to file suit, but the Coalition filed its Complaint just four weeks after Texas codified its TikTok ban, *see* Compl. ¶ 39, ECF No. 1, and filed its preliminary injunction motion—with four declarations, including two expert declarations—eight weeks after that, *see* ECF No. 20. This was not "slow." *Cf. Sierra Club v. U.S. Army Corps of Eng'rs*, 482 F. Supp. 3d 543, 555 (W.D. Tex. 2020) (holding that plaintiff who waited four months to seek preliminary relief did not thereby forfeit argument that harm was irreparable). And Texas's assertion that entry of an injunction here would be "catastrophic," PI Opp. 20, is simply unsupported by the record. The Coalition has submitted declarations establishing that the ban is ineffective, counterproductive, and unnecessary in light of the available alternatives. In these circumstances, the balance of equities and the public interest both strongly favor the entry of preliminary relief.

## Conclusion

For the reasons above, the Coalition respectfully asks the Court to grant its motion.

Dated: November 6, 2023                          Respectfully submitted,

 /s/ *Peter B. Steffensen*                         /s/ *Jameel Jaffer*

Peter B. Steffensen                              Jameel Jaffer (*Pro Hac Vice*)
Texas Bar No. 24106464                           Ramya Krishnan (*Pro Hac Vice*)
SMU Dedman School of Law First                   Xiangnong Wang (*Pro Hac Vice*)
  Amendment Clinic                               Knight First Amendment Institute
P.O. Box 750116                                     at Columbia University

Dallas, TX 75275
(214) 768-4077
psteffensen@smu.edu

475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
jameel.jaffer@knightcolumbia.org

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Todd A. Dickerson

Office of the Attorney General of Texas

P.O. Box 12548-Capitol Station

Austin, TX 78701

Dated: November 6, 2023                          /s/ *Jameel Jaffer*
 _____
                                                 Jameel Jaffer (*Pro Hac Vice*)
                                                 Knight First Amendment Institute
                                                   at Columbia University
                                                 475 Riverside Drive, Suite 302
                                                 New York, NY 10115
                                                 (646) 745-8500
                                                 jameel.jaffer@knightcolumbia.org

                                                 *Counsel for Plaintiff*

12