IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COALITION FOR INDEPENDENT TECHNOLOGY RESEARCH,<br><br>Plaintiff,<br><br>v.<br><br>GREG ABBOTT, *in his official capacity as Governor of the State of Texas*; STEVEN C. MCCRAW, *in his official capacity as Director and Colonel of the Texas Department of Public Safety*; AMANDA CRAWFORD, *in her official capacity as Executive Director of the Texas Department of Information Resources and Chief Information Officer of Texas*; DALE RICHARDSON, *in his official capacity as Chief Operations Officer of the Texas Department of Information Resources*; ASHOK MAGO, LAURA WRIGHT, LINDY RYDMAN, CARLOS MUNGUIA, MARY DENNY, MILTON B. LEE, MELISA DENIS, DANIEL FEEHAN, and JOHN SCOTT, JR., *in their official capacities as members of the Board of Regents of the University of North Texas System*; and MICHAEL WILLIAMS, *in his official capacity as Chancellor of the University of North Texas System*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 1:23-CV-783-DII |

**ORDER**

Before the Court is Defendants'[1] motion to dismiss Plaintiff Coalition for Independent Technology Research's ("Plaintiff") complaint. (Dkt. 21). Plaintiff filed a response in opposition,

[1] Defendants Greg Abbott, *in his official capacity as Governor of the State of Texas*; Steven C. McCraw, *in his official capacity as Director and Colonel of the Texas Department of Public Safety*; Amanda Crawford, *in her official capacity as Executive Director of the Texas Department of Information Resources and Chief Information Officer of Texas*; Dale Richardson, *in his official capacity as Chief Operations Officer of the Texas Department of Information Resources*; Ashok Mago, Laura Wright, Lindy Rydman, Carlos Munguia, Mary Denny, Milton B. Lee, Melisa Denis, Daniel Feehan, and John Scott, Jr., *in their official capacities as members of the Board of Regents of the University of North Texas System*; and Michael Williams, *in his official capacity as Chancellor of the University of North Texas System* ("Defendants") collectively moved to dismiss Plaintiff's complaint. (Dkt. 21). For ease of reference, the Court

(Dkt. 29), and Defendants filed a reply, (Dkt. 32). Also before the Court is Plaintiff's motion for a preliminary injunction. (Dkt. 20). Defendants filed a response in opposition, (Dkt. 31), and Plaintiff filed a reply, (Dkt. 33). Having considered the parties' briefs, the record, and the relevant law, the Court finds that Defendants' motion to dismiss, (Dkt. 21), should be granted. In light of this ruling, Plaintiff's motion for a preliminary injunction, (Dkt. 20), is moot.

## I. BACKGROUND

In December 2022, Defendant Greg Abbott, the Governor of Texas, issued a directive ordering "every state agency in Texas" to "ban its officers and employees from downloading or using TikTok on any of its government-issued devices." (Directive, Dkt. 1-2, at 2). Agency heads would be permitted to "grant exceptions to enable law-enforcement investigations and other legitimate uses of TikTok on state-issued devices." (*Id.* at 2). Governor Abbott directed the Texas Department of Public Safety ("DPS") and the Texas Department of Information Resources ("DIR") "to develop a model plan that other state agencies can deploy with respect to the use of TikTok on personal devices," while providing that each state agency would develop "its own policy." (*Id.* at 3). Under the directive, DPS would approve each policy, after which point each individual agency would be responsible for "implement[ing] that policy for its employees, contractors, and facilities." (*Id.*). In January 2023, DPS and DIR published their Model Security Plan for Prohibited Technologies. (Model Plan, Dkt. 1-3). The model plan provided that each agency would be "required to develop its own security policy to support the implementation of this plan." (*Id.* at 9). In May 2023, the Texas Legislature codified most of Governor Abbott's directive as Senate Bill No. 1893. (S.B. 1893, 88th Leg., R.S.; codified at Tex. Gov't Code § 620.001 *et seq.*; Dkt. 1-4).

---

will refer to McCraw, Crawford, and Richardson as the "Texas Defendants" and to Mago, Wright, Rydman, Munguia, Denny, Lee, Denis, Feehan, Scott, and Williams as the "UNT Defendants." Abbott has been dismissed from the case per Plaintiff's oral representation to the Court, *see infra* p. 6, and thus, he is not included in either grouping.

Pursuant to the Governor's directive and in anticipation of a codified TikTok ban, the University of North Texas System ("UNT") promulgated its own policies regarding the TikTok ban. (Compl., Dkt. 1, at 15–16). In December 2022, UNT's Information Technology Office required UNT faculty and staff to "'immediately cease using or downloading TikTok on any institutionally issued and/or managed devices.'" (*Id.* at 15 (quoting an email from UNT's Information Technology Office)). UNT subsequently "was able to block the installation of TikTok on university-issued devices, to remove TikTok from university-issued devices where it had already been installed, and to prevent university-issued devices from communicating with TikTok's servers." (*Id.* at 16). UNT currently prohibits faculty and staff from using TikTok "on university-owned equipment, for any reason." (*Id.*).

Plaintiff, a group of "academics, journalists, civil society researchers, and community scientists," brought suit challenging Texas's TikTok ban,[2] which "extends to all faculty at public universities." (Compl., Dkt. 1, at 2). Plaintiff argues that the ban "is preventing or seriously impeding faculty from pursuing research that relates to TikTok" and has "made it almost impossible for faculty to use TikTok in their classrooms." (*Id.*). Plaintiff challenges the constitutionality of Texas's TikTok ban "as applied to faculty at public universities" and argues that "the government's authority to control their research and teaching is limited by the First Amendment." (*Id.* at 3). Plaintiff further contends that the TikTok ban is an unconstitutional, broad restraint and asks the Court (1) to declare that the ban "is unconstitutional as applied to faculty at public universities," and (2) to exempt Plaintiff's members from the ban in the absence of "a constitutionally adequate means of accessing TikTok for research and teaching purposes." (*Id.* at 4).

---

[2] Plaintiff describes Texas's TikTok ban as an amalgam of the above-referenced items: "a directive from the governor, a model security plan issued by two state agencies, university implementation policies, and a statute." (Compl., Dkt. 1, at 4).

Defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. Dismiss, Dkt. 21). Defendants argue that Plaintiff's complaint should be dismissed under Rule 12(b)(1) because all Defendants except UNT Chancellor Williams are entitled to sovereign immunity under *Ex parte Young*, 209 U.S. 123 (1908), and because Plaintiff lacks standing with respect to all Defendants except UNT. (*Id.* at 9–10). In response, Plaintiff argues that "[a]ll of the Defendants are amenable to suit because all of them have a role in enforcing the challenged ban" and that Plaintiff is only requesting relief with respect to UNT, even though "[t]he injuries of non-UNT faculty would be redressed by the relief sought." (Resp., Dkt. 29, at 3, 6, 6 n.5). Defendants also argue that Plaintiff's complaint should be dismissed under Rule 12(b)(6) because UNT's devices and networks are nonpublic forums, and the "ban easily survives this lenient test." (Mot. Dismiss, Dkt. 21, at 11). Defendants allege that even if a public forum analysis applied, the ban would still be constitutional. (*Id.*). In response, Plaintiff states that this is a case about public employee speech, not public forums, but even if it were a public forum case, the ban would still fail that constitutional analysis. (Resp., Dkt. 29, at 13, 16).

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert.*

*denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338

(5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

At the outset, the Court notes Plaintiff's oral representation to the Court on November 15, 2023 that Plaintiff agrees to dismiss Defendant Greg Abbott from the case. (*See* Minute Entry, Dkt. 35). Accordingly, Defendant Abbott is dismissed from the case. The Court's discussion will focus on the remaining 13 Defendants.

### A. Federal Rule of Civil Procedure 12(b)(1)

Defendants present two arguments for dismissal under Rule 12(b)(1): (1) all Defendants other than UNT Chancellor Williams "are entitled to sovereign immunity as they are not the 'enforcement officers' for the laws and policies in question," and (2) Plaintiff can only sue "UNT as it lacks standing to sue any other Texas universities." (Mot. Dismiss, Dkt. 21, at 8). Defendants ask the Court (1) to dismiss all Defendants other than UNT Chancellor Williams and (2) to limit Plaintiff's claims to UNT. (*Id.* at 11). Plaintiff responds that Defendants are not immune "because all of them have a role in enforcing the challenged ban" and argues that Plaintiff is only requesting relief with respect to UNT, even though "[t]he injuries of non-UNT faculty would be redressed by the relief sought." (Resp., Dkt. 29, at 3, 6, 6 n.5).

**1. Sovereign Immunity**

The Eleventh Amendment typically deprives federal courts of jurisdiction over "suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. Of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Under the *Ex parte Young* exception to sovereign immunity, lawsuits may proceed in federal court when plaintiffs request prospective relief against state officials in their official capacities for ongoing federal violations. *Ex parte Young*, 209 U.S. at 159–60. "For the [*Ex parte Young*] exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Ex parte Young*, 209 U.S. at 157).

Neither a specific grant of enforcement authority nor a history of enforcement is required to establish a sufficient connection. *City of Austin*, 943 F.3d 993 at 1001; *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). Rather, there need be only a "scintilla of enforcement by the relevant state official" for *Ex parte Young* to apply. *City of Austin*, 943 F.3d at 1002 (quotations omitted). Actual threat of or imminent enforcement is "not required." *Air Evac*, 851 F.3d at 519.

**a. The UNT Defendants**

It is undisputed that Chancellor Williams is not immune from this suit. (Mot. Dismiss, Dkt. 21, at 9 ("Defendants do not dispute that Chancellor Williams is a proper party to this lawsuit.")). The Court concurs. The TikTok ban requires every agency to promulgate and enforce its own version of the TikTok ban. (Mot. Dismiss, Dkt. 21, at 6 n.44 (citing Tex. Gov't Code § 620.001 *et seq.*)). The UNT Board of Regents Rules provide that "[t]he Board delegates authority to the Chancellor to develop and adopt System Administration policies." (UNT Sys. Bd. Of Regents Rules,

Rule 02.202, Dkt. 21-1). Therefore, Chancellor Williams is clearly tasked with enforcing Texas's TikTok ban vis-à-vis UNT.

Defendants argue that Plaintiff "did not establish an enforcement connection for the other Defendants." (Mot. Dismiss, Dkt. 21, at 9). However, as Plaintiff notes, the Fifth Circuit recently held in a similar case that the members of the UNT Board of Regents "ha[d] the required 'scintilla of enforcement' due to their governing authority over UNT." *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023). Here, as in *Jackson*, the members of the UNT Board of Regents "have direct governing authority over the UNT official[] that [is] allegedly continuing to violate [Plaintiff's] First Amendment rights." *Id.* at 368. Section 105.051 of the Texas Education Code provides that "[t]he organization, control, and management of the University of North Texas System and each component institution of the system is vested in a board of nine regents." (Compl., Dkt. 1, at 6–7 (citing Tex. Educ. Code § 105.051 (2023)). Further, the UNT Board of Regents Rules provide that "[t]he Chancellor reports to and is responsible to the Board." (Resp., Dkt. 29, at 3 (citing UNT Sys. Bd. Of Regents Rules, Rule 04.101 (2007)). Therefore, the members of the UNT Board of Regents also have the requisite "scintilla of enforcement." *City of Austin*, 943 F.3d at 1002 (quotations omitted). Accordingly, the Court finds that the UNT Defendants are not immune from suit.

Once it is clear that the named defendants are proper, the Court conducts "a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Commn. of Maryland*, 535 U.S. 635, 645 (2002) (quotation omitted). Plaintiff's complaint meets these requirements with respect to the UNT Defendants. As to the first prong, the complaint alleges a violation of the First Amendment to the United States Constitution. As to the second prong, the relief is prospective, because Plaintiff "[seeks] only injunctive and declaratory relief," as in *Jackson*. 82 F.4th at 366.

Therefore, the UNT Defendants are not immune from suit, as Plaintiff's requested relief falls under the *Ex parte Young* exception.

**b. The Texas Defendants**

This leaves the question of whether the Texas Defendants are immune from suit. McCraw is the Director and Colonel of DPS, Crawford is the Executive Director of DIR and Chief Information Officer of Texas, and Richardson is the Chief Operations Officer of DIR. As the Fifth Circuit recently noted in *Jackson*, "*Ex parte Young* created a narrow doorway through the sovereign immunity defense." 82 F.4th at 367. The Court finds that Plaintiff cannot push the Texas Defendants through this "narrow doorway." The Texas Defendants serve more as a repository and a resource for the UNT Defendants that promulgated the TikTok ban at issue in this case, rather than as enforcers of the ban. While Governor Abbott directed DPS and DIR "to develop a model plan that other state agencies can deploy with respect to the use of TikTok on personal devices," Governor Abbott provided that each state agency would come up "with its own policy." (Directive, Dkt. 1-2, at 3). While DPS is responsible under the directive for approving each policy, each individual agency is responsible for "implement[ing] that policy for its employees, contractors, and facilities." (*Id.*). Simply put, the Texas Defendants are not involved in the enforcement of each agency's policy implementing the TikTok ban. Therefore, the Court finds that the Texas Defendants lack the requisite "scintilla of enforcement" in this regard and are thus immune from suit. *City of Austin*, 943 F.3d at 1001–02 (quotations omitted). Accordingly, the Texas Defendants are dismissed from the lawsuit.

**2. Standing**

Plaintiff also must have standing to bring its lawsuit.[3] As the Court has found that Plaintiff can only properly sue the UNT Defendants, the Court's analysis of Plaintiff's standing will be limited to the UNT Defendants. Generally, to have Article III standing, "'a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.'" *Texas Democratic Party v. Abbott*, 961 F.3d 389, 399 (5th Cir. 2020) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)). As Plaintiff is not an individual, but rather an organization bringing suit on behalf of its members, Plaintiff must establish associational standing on behalf of its injured members. To do so, Plaintiff must show: "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Defendants concede that Plaintiff has standing to assert a claim against UNT. (Mot. Dismiss, Dkt. 21, at 8 (Plaintiff's "claims are limited to UNT as it lacks standing to sue any other Texas universities.")). But Defendants argue that Plaintiff "lacks standing to assert a claim against Texas universities other than UNT" because Plaintiff only sued UNT officials, "relies on associational standing" but only alleges injury to UNT members, and did not allege that any other schools' bans were applied to its members. (*Id.* at 10). In response, Plaintiff argues that it is only asking the Court for relief with regard to UNT. (Resp., Dkt. 29, at 6). However, Plaintiff also notes that if the Court

[3] The Fifth Circuit "has acknowledged that our Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin*, 943 F.3d at 1002.

were to grant its requested declaratory and injunctive relief, "[t]he injuries of non-UNT faculty would be redressed" because there would be no way for Defendants to revise the ban without "necessarily impact[ing] other universities' implementations of it." (*Id.* at 6 n.5). Thus, Plaintiff seems to implicitly concede that it asks for relief beyond that which could be compelled by only the UNT Defendants.

The Court finds that Plaintiff has standing to bring suit with regard to the harm allegedly caused by UNT, but that Plaintiff lacks standing to request relief from other public universities. To establish associational standing, Plaintiff must first show that "its members would otherwise have standing to sue in their own right." *United Food*, 517 U.S. at 553. Plaintiff's "members are academics, journalists, civil society researchers, and community scientists." (Compl., Dkt. 1, at 2). The Court finds that Plaintiff's members have "suffered an injury in fact that is concrete, particularized, and actual or imminent." *Texas Democratic Party*, 961 F.3d at 399. Plaintiff alleges that its "members are faculty at public universities in Texas whose research and teaching have been compromised by Texas's TikTok ban." (Compl., Dkt. 1, at 2). Plaintiff alleges that these faculty cannot perform research or teaching using TikTok on their state-issued devices or on their personal devices that connect to state networks. (*Id.* at 17). Plaintiff alleges that the ban:

> prevents faculty from pursuing research that relates to TikTok. It undermines their ability to supervise student work, and to access and review the work of other researchers, including as part of the peer-review process. It also makes it nearly impossible for faculty to use TikTok in their classrooms, whether to teach about TikTok or to use content from the platform to teach about other subjects.

(Resp., Dkt. 29, at 11). Thus, Plaintiff has alleged that its members have "suffered an injury in fact that is concrete, particularized, and actual or imminent." *Texas Democratic Party*, 961 F.3d at 399. Second, the Court also finds that the UNT Defendants' TikTok policy caused Plaintiff's members' injury. If not for UNT's policy banning TikTok on UNT's devices and networks, Plaintiff's members on UNT campuses would be able to use TikTok for their research and teaching. Finally,

the Court finds that Plaintiff's members' "injury would likely be redressed by the requested judicial relief."' *Id.* at 399. If the UNT Defendants were forced to exempt Plaintiff's members from their TikTok policy, Plaintiff's members' injuries would disappear, as they would be able to access TikTok on UNT's devices and networks. Therefore, the Court finds that Plaintiff meets prong one of the associational standing analysis.

Prong two of the associational standing analysis requires that "the interests [Plaintiff] seeks to protect are germane to the organization's purpose." *United Food*, 517 U.S. at 553. Plaintiff is an organization that "works to advance, defend, and sustain the right to study the impact of technology on society." (Compl., Dkt. 1, at 2). Plaintiff seeks to protect its members' right to do such work in Texas. Accordingly, Plaintiff has met the second factor. Lastly, prong three of the associational standing analysis requires that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food*, 517 U.S. at 553. The Court finds that Plaintiff's members are not required to participate in this lawsuit individually. Accordingly, Plaintiff meets the requirements of associational standing, but only as limited to UNT.

**B. Federal Rule of Civil Procedure 12(b)(6)**

Defendants also argue that Plaintiff's claims must be dismissed under Rule 12(b)(6).[4] Defendants acknowledge that the TikTok ban is a restriction on speech. (Mot. Dismiss, Dkt. 21, at 10–11). While legislators can impose restrictions on speech protected by the First Amendment, such restrictions are subject to constitutional limitations. Defendants argue that the TikTok ban survives any level of constitutional scrutiny. In their motion, Defendants state that the appropriate constitutional framework for the Court to apply to the TikTok ban is the nonpublic forum analysis and that "Texas's partial TikTok ban easily survives this lenient test." (Dkt. 21, at 11). Defendants

[4] Having dismissed the Texas Defendants from the case under Rule 12(b)(1), the Court focuses on the remaining UNT Defendants. However, the Court notes that were the Texas Defendants to survive the Rule 12(b)(1) analysis, the following Rule 12(b)(6) analysis would apply to these Defendants as well.

further contend that "Texas's ban would be constitutional under even the more rigorous scrutiny applied to designated and traditional public forums," (*id.*), or under an "employment-based test," (Reply, Dkt. 32, at 10). Plaintiff counters that this is a case about public employee speech and contends that the ban fails under this framework. (Resp., Dkt. 29, at 13 ("Forum analysis is appropriate when outsiders assert a right to speak on government property. Unlike members of the general public, however, public employees are necessarily invited onto and authorized to use government workplaces, including for expressive purposes. In this context, the Supreme Court has consistently applied employee speech doctrine, not forum analysis.")). Plaintiff also argues that the ban could not survive even public forum analysis. (*Id.* at 16 ("The ban . . . is not reasonable in light of the relevant forums' expressive purposes.")).

The Court notes at the outset the importance of the First Amendment in American jurisprudence, which is heightened here. Plaintiff has brought a challenge to Texas's TikTok ban as applied to public university faculty, who are both academics and public employees, both of which are categories that have historically received extra protection under the First Amendment. The United States Supreme Court has emphasized that academic "freedom is . . . a special concern of the First Amendment." *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967). "Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding." *Sweezy v. State of N.H. by Wyman*, 354 U.S. 234, 250 (1957). Thus, academic freedom receives extra protection under the law.

The United States Supreme Court has also long supported the rights of public employees, as "citizens do not surrender their First Amendment rights by accepting public employment." *Lane v. Franks*, 573 U.S. 228, 231 (2014) (citing *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968)). "There is considerable value … in encouraging, rather than inhibiting, speech by public employees." *Id.* at 236. In *Garcetti v. Ceballos*, the Supreme Court held

that "[s]o long as employees are speaking as citizens about matters of public concern,[5] they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." 547 U.S. 410, 419 (2006). The Supreme Court left open the question of whether the *Garcetti* analysis applies to "speech related to scholarship or teaching." *Id.* at 425. However, other circuits have found that it does. *See, e.g.*, *Porter v. Bd. of Tr. of N.C. State Univ.*, 72 F.4th 573 (4th Cir. 2023); *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021); *Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014).

While the Court recognizes the importance both of protecting academic freedom and supporting public employees' right to free speech, the Court finds that these important ideals do not dictate the appropriate framework for this case. Texas's TikTok ban is not a restraint on public employee speech. Even as applied to public university faculty, who are entitled to special considerations under the law, the Court finds that the ban is not a restraint on speech in a public forum, but rather a restriction on a nonpublic forum motivated by Texas's data protection concerns regarding TikTok, an app owned by a company based in China. (Compl., Dkt. 1, at 2). Texas's TikTok ban is limiting the use of an app on state-provided devices and networks, which is not a blanket prohibition. Public university faculty—and all public employees—are free to use TikTok on their personal devices (as long as such devices are not used to access state networks). Therefore, the Court disagrees with Plaintiff's characterization of the ban as falling under the category of public employee speech. The Court finds nonpublic forum analysis to be the proper framework for Plaintiff's challenge, as the ban relates to Texas's regulation of its own governmental property.

[5] "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 573 U.S. at 241 (2014) (quotations omitted).

There are "three types of government-controlled spaces: traditional public forums, designated public forums, and nonpublic forums." *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). A nonpublic forum is "'not by tradition or designation a forum for public communication,'" and "the government has much more flexibility to craft rules limiting speech." *Id.* (quoting *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983)). Nonpublic forum analysis takes into consideration the fact that "the government, 'no less than a private owner of property,' retains the 'power to preserve the property under its control for the use to which it is lawfully dedicated.'" *Id.* (quoting *Adderley v. Florida*, 385 U.S. 39, 47 (1966)). "The touchstone" of nonpublic forum analysis "is whether [restrictions] are reasonable in light of the purpose which the forum at issue serves." *Perry*, 460 U.S. at 49. Furthermore, the restriction must not be "an effort to suppress expression merely because public officials oppose the speaker's view." *Mansky*, 138 S. Ct. at 1885 (quoting *Perry*, 460 U.S. at 46).

This is a nonpublic forum case. The Supreme Court "ha[s] focused on the access sought by the speaker" when determining which type of forum is at issue. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985). In *Perry*, the Supreme Court found that a public school's "internal mail system" was a nonpublic forum. 460 U.S. at 952, 957; *see also Fac. Rts. Coal. v. Shahrokhi*, 204 F. App'x 416, 419 (5th Cir. 2006) (applying nonpublic forum analysis to a public university's email policies). Here, Texas is providing a restriction on state-owned and -managed devices, which constitute property under Texas's governmental control like the public school's internal mail system in *Perry*. Since this is "government property that has not been made a public forum, not all speech is equally situated, and the state may draw distinctions which relate to the special purpose for which the property is used." *Perry*, 460 U.S. at 55. Here, Texas has decided to limit access to TikTok on state-owned devices and networks due to concerns that the Chinese

government may have access to sensitive data from TikTok users. (Compl., Dkt. 1, at 2). Thus, Texas is restricting access to governmental property due to security concerns.

First, the Court notes that Texas's TikTok ban is viewpoint-neutral, as it prevents all public employees from accessing TikTok. Thus, even though the ban in effect prevents public university faculty from accessing TikTok on their state-provided and -managed devices, it applies generally to all public employees. Therefore, the Court will turn to its inquiry as to the reasonableness of the ban.

The Court finds that Texas's limited TikTok ban is "reasonable in light of the purpose which the forum at issue serves." *Perry*, 460 U.S. at 49. Unlike other states' more sweeping TikTok bans of late, Texas's TikTok ban applies only to state devices and networks, leaving those impacted by the ban free to use TikTok on their personal devices on their own networks (as long as they are not used to access state networks). While the Court agrees with Plaintiff that the ban prevents certain public university faculty from using state-provided devices and networks to research and teach about TikTok, the Court finds that the ban is a reasonable restriction on access to TikTok in light of Texas's concerns. "The Government's decision to restrict access to a nonpublic forum need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808. Here, Texas has cited data privacy concerns that have motivated its decision to limit access to TikTok on state-operated devices and networks.[6] Texas has also limited the scope of the ban to state employees. Further, there are numerous other ways for state employees, including public university faculty members, to access TikTok, such as on their personal devices. Thus, the Court draws a distinction between Texas's TikTok ban and the law recently considered in *Alario v. Knudsen*, in which the United States District Court for the District of Montana preliminary enjoined Montana's total TikTok ban, which was far broader than Texas's TikTok ban. No. CV 23-56-M-DWM, 2023

---

[6] The Court notes Plaintiff's argument that Texas did not ban other social media applications. (Compl., Dkt. 1, at 23). But the Court finds that this fact counsels in favor of Defendants, not Plaintiff. Texas limited the scope of its ban to one application about which it cited legitimate data security concerns.

WL 8270811, at *6–*7 (D. Mont. Nov. 30, 2023) (finding that "even applying intermediate scrutiny, the State fails to show how [Montana's TikTok ban] is constitutionally permissible" because it "completely bans a platform where people speak").

While Plaintiff argues that data concerns about TikTok have yet to be fully verified, (Compl., Dkt. 1, at 12 ("[t]hese concerns are speculative")), Texas "need not wait until havoc is wreaked to restrict access to a nonpublic forum." *Cornelius*, 473 U.S. at 810. Ultimately, the Court finds that Texas's TikTok ban is a reasonable, viewpoint-neutral restriction on a nonpublic forum and therefore is constitutional. Accordingly, Plaintiff's complaint must be dismissed because it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Abbott is **DISMISSED** from the case.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss, (Dkt. 21), is **GRANTED**. Plaintiff's claims are dismissed without prejudice. Plaintiff does not seek leave to amend its complaint. (Resp., Dkt. 29).

**IT IS FURTHER ORDERED** that Plaintiff's motion for a preliminary injunction, (Dkt. 20), is **MOOT**.

**SIGNED** on December 11, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE